UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARTHUR HARDY,<br>    Plaintiff,<br><br>v.<br><br>UPS GROUND FREIGHT, INC.,<br>    Defendant. | Civil Action No. 17-30162-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION TO QUASH
SUBPOENA AND FOR PROTECTIVE ORDER
(Dkt. No. 46)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Plaintiff Arthur Hardy (Plaintiff) has brought suit against his employer, UPS Ground Freight, Inc. (Defendant) for retaliation, asserting claims exclusively under the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B (Dkt. 7 at 5-9). The parties are presently engaged in discovery. Before the court is Plaintiff's October 23, 2018 motion to quash a deposition subpoena duces tecum addressed to his mother, Wanda Waites, and for a protective order precluding Defendant from deposing Ms. Waites (Dkt. No. 46) (Plaintiff's Motion). Defendant opposes the motion (Dkt. No. 48). The court heard argument from the parties on December 10, 2018 and took Plaintiff's Motion under advisement. For the reasons set forth below, the court DENIES Plaintiff's Motion.

II. RELEVANT BACKGROUND

Plaintiff's complaint alleges retaliation beginning in or around 2014 and continuing through the present (Dkt. No. 47 at 1). This is Plaintiff's second lawsuit against Defendant. Plaintiff's first case against Defendant, alleging hostile workplace based on race, was tried to a jury and resulted in a defense verdict. *See Hardy v. UPS Ground Freight, Inc.*, No. 3:15-cv-

1

3019-MGM (D. Mass. filed Nov. 5, 2015) (Dkt. No. 159). During his deposition in the first case, Plaintiff testified that his stepfather had been emotionally abusive to him while he was between the ages of eight and fourteen. There was no physical abuse. He said the mental or emotional abuse was also inflicted on his mother and that the abuse directed at him had the effect of lowering his self-esteem Plaintiff explained that his stepfather was a Vietnam veteran who used drugs and alcohol. Plaintiff's stepfather left the house in 1999 and returned around 2003 after treatment. He apologized for everything, and he and Plaintiff got off to a fresh start. Plaintiff's stepfather died in 2016. He was living with Plaintiff at the time (Dkt. No. 47-3 at 3-5; Dkt. No. 48-1 at 4-10). A therapist who treated Plaintiff testified at the trial of the first case between these parties. According to the therapist, during counseling, Plaintiff said that he was emotionally abused as a child by being called stupid and dumb. The therapist testified that, if true, Plaintiff's account of his relationship with his stepfather could be a significant contributor to Plaintiff's current emotional distress. The therapist also testified that he thought Plaintiff's stepfather's death in 2016 had contributed to Plaintiff's depression (Dkt. No. 48-2 at 8). In Defendant's opposition to Plaintiff's Motion, Defendant represents that its attorneys are entitled to depose Ms. Waites because it considers: (1) the "[h]istory, scope, and impact of abuse the Plaintiff suffered as a child," (2) "the scope of Plaintiff's mother's abuse, to which Plaintiff was a witness," and (3) the death of Plaintiff's stepfather to be directly probative as to the cause of Plaintiff's emotional distress in the relevant timeframe (Dkt. No. 48 at 3-4). (Dkt. No. 47 at 3-4).

III. ANALYSIS

When confronted with a discovery dispute such as this one, the court must first determine whether the information sought is relevant to a party's claims or defenses in the action and, if so, whether there are nonetheless grounds for a protective order under Fed. R. Civ. P. 26(c). *See St.*

*John v. Napolitano*, 274 F.R.D. 12, 15 (D.D.C. 2011). Fed. R. Civ P. 26(b) defines the scope of discoverable information by providing, in pertinent part, that a party:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery – here, Defendant – has the burden of establishing that the requested information is relevant to its claims or defenses. *See Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014) (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Defendant points out that, because Plaintiff remains employed by Defendant, he can show little, if any, financial loss, so that his potential recovery is limited for the most part to damages for emotional distress. Under Massachusetts law, which governs in this case, Plaintiff cannot recover from Defendant for emotional distress attributable to causes other than the retaliation he alleges occurred in his workplace. *See, e.g., Stonehill Coll. v. Massachusetts Comm'n Against Discrimination*, 808 N.E.2d 205, 225 (Mass. 2004) (in discussing limits on administrative agency awards for emotional distress, the court observed that "[e]motional distress existing from circumstances other than the actions of the respondent, or from a condition existing prior to the unlawful act, is not compensable"). Thus, information about factors other than events at work that might have caused or contributed to Plaintiff's claimed depression and emotional distress is relevant and important to the defense. Plaintiff's deposition testimony and the trial testimony of his therapist in the first case tend to show that his difficult relationship with his stepfather in the past, and distress caused by his stepfather's death are such factors. It follows, Defendant argues, that

3

testimony from Plaintiff's mother about the relationship, the death, and her observations about the effect of these events on her son is relevant.

Rule 26(c) provides that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The court may issue such an order only for good cause, and the party seeking a protective order – here, Plaintiff – bears the burden of establishing good cause. *See, e.g., Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016). "Such an order may forbid disclosure altogether, or, among other measures, 'limit[] the scope of disclosure or discovery to certain matters.' Fed. R. Civ. P. 26(c)(1)(A) and (D)." *St. John*, 274 F.R.D. at 16. Nonetheless, because depositions are a particularly productive method of discovery, "'for ordinary discovery, protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances.'" *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 437 (quoting *BB & T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006); citing *Prozina Shipping Co. v. Thirty-Four Autos.*, 179 F.R.D. 41, 48 (D. Mass. 1998); *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994); *Motzinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988)). "'[A]lthough Rule 26(c) contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.'" *St. John*, 274 F.R.D. at 16 (quoting *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (quotation omitted)). Plaintiff acknowledges that Defendant is entitled to defend itself against Plaintiff's damages claims by showing that his emotional distress was attributable in whole or in part to events unrelated to his employment (Dkt. No. 47 at 3-4). He argues that there is good cause for a protective order prohibiting the deposition of his mother because information about events in his childhood are so

remote in time as to be irrelevant, and, to the extent such information has some marginal relevance, there are less intrusive sources other than Plaintiff's mother, including Plaintiff himself, his therapist, and his wife, from whom to seek the information (Dkt. No. 47 at 3-4).[1]

There is merit in Plaintiff's position with respect to events that are as remote in time as the negative interactions he had with his stepfather some twenty-five years ago. In cases involving the discovery of the contents of personnel files and records of mental health counseling and medical treatment, a number of district courts have acknowledged the plaintiffs' privacy interests in these materials. Some courts have found a lack of relevance when events are remote in time or have found that confidentiality interests outweigh a defendant's interest in access to the information. These courts have placed limits on such discovery, including that the discovery not be had or that it be limited in scope and time. For example, in *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1 (D. Mass. 2014), a session of this court allowed the EEOC's motion to quash subpoenas for personnel files directed to entities that had employed the claimants subsequent to their employment with the defendant, Texas Roadhouse, on the grounds that the personnel files contained private information, that the requests for the files might disrupt the claimants' current employment relationships, and that information about qualifications and subsequent employment was available through depositions of the claimants themselves. *Id.* at 2-3.

---

[1] In support of Plaintiff's Motion, he submitted portions of his mother's medical records (under seal) and argued that her health problems were an additional factor the court should consider in ruling on whether to quash the subpoena for her testimony. The court was not provided with evidence showing that Ms. Waites is unable to appear at a deposition because of her medical condition if appropriate safeguards are in place. Defendant indicated his willingness to abide by limitations on Ms. Waites's deposition dictated by her medical condition. At the hearing, Plaintiff's counsel informed the court that she was confident that, if Defendant was permitted to take Ms. Waites's deposition, counsel for the parties could work together to ensure that appropriate limits are placed on the deposition based on Ms. Waites's medical condition. Accordingly, Ms. Waites's medical condition does not factor into this decision.

In the *St. John* case, the defendant employer moved to compel the production of the plaintiff's mental health and other medical records for a nine-year period. The plaintiff argued that the records were not relevant because he had not sought treatment from any health care provider for any injury resulting from the defendant's conduct. Weighing the "weak basis" for seeking records covering such a lengthy time period against the privacy concerns inherent in discovery related to a plaintiff's mental and physical health, the court found that disclosure of "some records in the plaintiff's medical history [was] warranted, but not the wholesale disclosure of medical records for the nine-year period, from 2002 through the present." 274 F.R.D. at 16. In addition, this court finds persuasive the observation of the court in *Auer v. City of Minot*, 178 F. Supp. 3d 835 (D.N.D. 2016) that "hurt feelings, humiliation, anger, and embarrassment [and depression] are things that most persons are likely to experience following an [adverse employment action] and jurors can readily evaluate the legitimacy of claims for damages for these emotions based on the examination and cross-examination of plaintiff, the circumstances surrounding [the adverse action], and their common experience." *Id.* at 845.

In the somewhat unusual circumstances of this case, however, the court finds that Plaintiff has not demonstrated the requisite good cause for precluding Defendant from deposing Ms. Waites about the three areas of inquiry identified above.[2] A plaintiff may choose to call a mental health care provider or other expert witness on the question of emotional distress. Here, Plaintiff chose to rely on a treating therapist, at least in his first case against Defendant. The therapist testified that, even though remote in time, Plaintiff's difficult relationship with his stepfather in his earlier years "would be a significant contributor to a lot of his current distress"

---

[2] This observation reflects the areas of questioning identified as relevant by Defendant and is not a ruling on the scope of questions Defendant may pose to Ms. Waites.

((Dkt. No. 48-2 at 8). As Defendant contends, this is a case in which, if Plaintiff prevails, the amount of his recovery will be based on the jury's evaluation of the extent of his emotional distress. In view of the therapist's trial testimony and, to a lesser extent, Plaintiff's deposition testimony about his stepfather's emotional abuse and its effect on him, Defendant has established the relevance of information about Plaintiff's difficult youthful relationship with his stepfather. As to the effect of his stepfather's death, Plaintiff testified that he and his stepfather had repaired their relationship. The death occurred in 2016, which means it was contemporaneous with the events at work that were allegedly retaliatory. Ms. Waites was living with Plaintiff when Plaintiff was having difficulty with his stepfather and when his stepfather died. Other than Plaintiff himself, no one else is in a similar position. Any testimony from Plaintiff's therapist is necessarily based on what Plaintiff told the therapist. Plaintiff's wife also does not have first-hand information about the circumstances of Plaintiff's youth and may or may not have personal knowledge of Plaintiff's reaction to his stepfather's death. Ms. Waites is uniquely situated to testify about Plaintiff's entire relationship with his stepfather and its possible effect – or the dissipation of that effect – on his emotional well-being during the relevant period. *See Green v. Cosby*, 160 F. Supp. 3d 431, 440 (D. Mass. 2016) (declining to quash a deposition subpoena directed to the defendant's wife who, with her unique role in the defendant's life, might possess a good deal of relevant, non-privileged material). The court cannot conclude that the events about which Defendant has indicated he wants to question Ms. Waites are of marginal relevance to the important issue of Plaintiff's potential damages, nor, in view of the therapist's testimony, can the court see a basis for limiting the scope of Ms. Waites's deposition to more recent events.

    IV.    C<small>ONCLUSION</small>

For the foregoing reasons, Plaintiff's Motion to Quash Subpoena and for Protective Order (Dkt. No. 46) is DENIED.

It is so ordered.

Dated: December 27, 2018

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE